**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ROBERT A. CLINE, | No. ED CV 08-463-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 14, 2008, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 22, 2008, and April 28, 2008. The parties filed a Joint Stipulation on December 18, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/
/
/

## II.

## **BACKGROUND**

Plaintiff was born on October 24, 1947. [Administrative Record ("AR") at 68.] He has an eleventh grade education [AR at 76], and past relevant work experience as a security guard and construction laborer. [AR at 33, 78.]

On June 15, 2006, plaintiff filed his application for Disability Insurance Benefits, alleging that he has been unable to work since March 1, 2002, due to emphysema, kidney problems, and vision problems. [AR at 28, 72.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 35-39, 41-45, 46.] A hearing was held on November 14, 2007, at which plaintiff appeared with counsel and testified on his own behalf. Testimony was also received from plaintiff's wife, a medical expert, and a vocational expert. [AR at 8-22.] On December 12, 2007, the ALJ determined that plaintiff was not disabled. [AR at 28-34.] Plaintiff requested review of the hearing decision. [AR at 7.] The Appeals Council denied plaintiff's request for review on March 10, 2008. [AR at 3-5.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform

past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had "not engage[d] in substantial gainful activity during the period from his alleged onset date of March 1, 2002 through his date last insured of December 31, 2004." [AR at 30.] At step two, the ALJ concluded that, through the date last insured, plaintiff had the "severe" impairment of chronic obstructive pulmonary disease ("COPD"). [Id.] At step three, the ALJ determined that, through the date last insured, plaintiff's impairment did not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that, through the date last insured, plaintiff retained the residual functional capacity ("RFC")[1] to perform a limited range of medium work. Specifically, the ALJ determined that plaintiff "could lift and carry 50 pounds occasionally and 25 pounds frequently"; "could stand and walk for 6 hours out of an 8-hour work day with breaks every 2 hours"; "could sit for 6 hours out of an 8-hour work day"; and "was restricted to an air conditioned environment free of excessive inhaled pollutants, such as an office." [Id.] At step four, the ALJ concluded that, through the date last insured, plaintiff was capable of performing his past relevant work as a security guard as it is generally performed in the national economy. [AR at 33-34.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from March 1, 2002, the alleged onset date, through December 31, 2004, the date last insured. [AR at 34.]

/

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to: (1) properly consider the treating physician's opinion regarding plaintiff's multiple functional limitations; (2) properly consider the treating physician's opinion regarding plaintiff's COPD; (3) fully and fairly develop the record regarding plaintiff's chronic kidney disease; (4) properly determine whether plaintiff met or equaled a Listing; (5) properly consider plaintiff's credibility; (6) properly consider lay witness testimony; and (7) pose a complete hypothetical question to the vocational expert. Joint Stipulation ("Joint Stip.") at 2-3. As set forth below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

**A.   TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).

"'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (quoting Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate

reasons for doing so that are based on substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling[2] 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

### 1.  Dr. Timothy Hantz

Plaintiff argues that the ALJ failed to properly consider the opinion of treating physician Dr. Timothy Hantz. Joint Stip. at 3-4. Specifically, plaintiff contends that the ALJ improperly rejected Dr. Hantz's findings without providing specific and legitimate reasons. Id.

On October 26, 2007, Dr. Hantz completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)" report in which he indicated that plaintiff had significant mental limitations. [AR at 437-38.] Specifically, Dr. Hantz opined that plaintiff had "[n]o useful ability to function" with respect to maintaining attention for two hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; dealing with normal work stress; understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals or

---

[2]  Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

making plans independently of others; dealing with stress of semiskilled and skilled work; traveling in unfamiliar places; and using public transportation. [Id.] Dr. Hantz further found that plaintiff was "unable to meet competitive standards" in his ability to remember work-like procedures and to understand and remember very short and simple instructions. [AR at 437.] He also reported that, on average, plaintiff's impairments would cause him to miss work more than four days per month. [AR at 438.]

In his decision, the ALJ did not find that plaintiff had any mental impairment. In so concluding, the ALJ did not discuss or even mention Dr. Hantz's October 26, 2007, findings. For the following reasons, the Courts finds no reversible error in the ALJ's failure to discuss Dr. Hantz's opinion.

When a Disability Insurance Benefits claimant's period of eligibility for disability benefits expires on a specific date, as was the case here, it is the claimant's burden to prove that he was either permanently disabled or subject to a condition that became so severe as to disable him on that date or prior to that date. See Armstrong v. Comm'r of the Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998). Plaintiff has failed to meet his burden. Dr. Hantz's report was completed on October 26, 2007, almost three years after plaintiff's date last insured and, therefore, was not relevant to the period at issue in the instant application -- March 1, 2002 (plaintiff's alleged onset date) through December 31, 2004 (the date last insured). See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1461 & n.4 (9th Cir. 1995) (observing that a "long line of cases" has established that a claimant must establish disability as of the date last insured, and that "any deterioration in her condition subsequent to that time is, of course, irrelevant"). Indeed, during the relevant time period, plaintiff never complained of, or received treatment for, any mental impairment. As such, the ALJ was not required to discuss Dr. Hantz's opinion.[3] See Vincent v.

---

[3] The Court notes that an ALJ should consider retrospective medical opinions. See Flaten, 44 F.3d at 1461 & n.5 ("Retrospective diagnoses by treating physicians and medical experts . . . are . . . relevant to the determination of a continuously existing disability with onset prior to expiration of insured status."); see also Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988) ("[M]edical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.") (citation omitted). However, Dr. Hantz's assessment of plaintiff's mental limitations cannot be considered a retrospective medical opinion in light of the fact that Dr. Hantz

7

Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (the ALJ need not discuss all of the evidence presented but must explain why he rejected "significant probative evidence") (citation omitted). Accordingly, remand is not warranted on this issue.

### 2. Dr. John Ang

Plaintiff next argues that the ALJ failed to properly consider the opinion of treating physician Dr. John Ang. Joint Stip. at 5-7. Specifically, plaintiff contends that the ALJ improperly rejected Dr. Ang's finding of mild COPD without providing specific and legitimate reasons for doing so. Id.

On June 27, 2006, plaintiff was referred to Dr. Ang for x-rays of the chest.[4] [AR at 262.] Dr. Ang reported that the x-rays showed, among other things, "[m]ild COPD with increasing hyperinflation of both lungs." [Id.]

In his decision, the ALJ noted that the record showed minimal treatment through the date last insured of December 31, 2004. [AR at 33.] The ALJ thereafter gave plaintiff "the benefit of the doubt" and found that plaintiff "had COPD, a severe impairment, prior to the date last insured," but that "there [was] no evidence this condition caused acute findings." [Id.]

Plaintiff contends that the ALJ improperly rejected Dr. Ang's finding of COPD when the ALJ assumed that plaintiff's COPD had resolved. Joint Stip. at 6-7. Specifically, plaintiff takes issue with the ALJ's use of the word "had," because COPD cannot be cured.[5] Joint Stip. at 6. Plaintiff's argument is based on a misinterpretation of the ALJ's finding. The ALJ reasonably stated that plaintiff "had" COPD, not because plaintiff no longer suffered from COPD, but because the

---

did not purport to assess plaintiff's mental limitations prior to the date last insured and the medical records pertaining to the relevant time period do not even remotely support his findings. [AR at 116-29, 437-38.]

[4] Dr. Ang does not appear to be a treating physician as he examined plaintiff on only one occasion. See 20 C.F.R. §§ 404.1502, 416.902 (defining "treating source" as a physician who has, or has had, an "ongoing treatment relationship" with the claimant). In any event, as will be discussed below, the ALJ properly considered Dr. Ang's finding.

[5] Plaintiff cites the Mayo Clinic website in support of his contention that COPD cannot be reversed or cured. Joint Stip. at 6.

relevant time period in this case ended on December 31, 2004. [AR at 33.] Plaintiff's medical condition after the date last insured was irrelevant to the merits of plaintiff's Disability Insurance Benefits claim. See Flaten, 44 F.3d at 1461 & n.4.

Here, the ALJ never indicated that plaintiff's COPD had resolved prior to the date last insured. Indeed, the ALJ found that, during the relevant time period, plaintiff's COPD was severe and resulted in work limitations. [AR at 30.] As such, the ALJ properly considered Dr. Ang's finding. Remand is not warranted on this issue.

**B.     FULL AND FAIR DEVELOPMENT OF THE RECORD**

Plaintiff contends that the ALJ failed to properly develop the record regarding his chronic kidney disease. Joint Stip. at 8-10. Specifically, plaintiff alleges that Dr. Jan Herrman's June 23, 2006, report demonstrated that the evidence concerning his chronic kidney disease was ambiguous.[6]  Joint Stip. at 8-9.

The ALJ has an affirmative duty to fully and fairly develop the record. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, only "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Id. (quoting Smolen, 80 F.3d at 1288). If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical

---

[6]  Although Claim Three is titled "Whether the ALJ fully and fairly developed the record regarding plaintiff's chronic kidney disease and stroke," plaintiff alleges only that the ALJ should have developed the record with respect to plaintiff's chronic kidney disease, not his stroke. Joint Stip. at 8-10, 11-12 (emphasis added). Therefore, the Court will not address the issue of whether the ALJ properly developed the record regarding plaintiff's stroke. In any event, the Court notes that the ALJ properly relied on the opinion of Dr. Samuel Landau, a medical expert, who testified that plaintiff started to have strokes in June 2005, after the date last insured. [AR at 32.] Based on Dr. Landau's testimony, the ALJ properly found that plaintiff's stroke was not a severe, medically determinable impairment prior to the date last insured. [AR at 32-33.] As such, the ALJ had no duty to further develop the record with respect to plaintiff's stroke.

source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

On June 23, 2006, Dr. Herrman conducted a physical examination of plaintiff. [AR at 136-38.] Plaintiff reported that he had developed an abrupt onset of slurred speech five days earlier, and that, although his speech had improved, he continued to have difficulty forming sentences to some degree. [AR at 136.] Plaintiff also complained that he experienced tingling of his right arm and bilateral leg pain. [Id.] Dr. Herrman observed that plaintiff was normocephalic; his lungs were clear to auscultation; his heart had a regular rhythm and rate without murmur, gallop, or rub; his extremities showed no cyanosis or clubbing, but there was "4+" bilateral lower extremity edema; his cerebellar function was normal; his deep tendon reflexes were "3-4+" at all sites; and his muscle strength was normal at all sites. [AR at 137.] Dr. Herrman's impressions included:

> 1. New stroke (versus vasculitis).
> 2. Chronic kidney disease with nephrotic syndrome as a result of a membranous glomerulopathy. The question here is whether this is idiopathic or part of a generalized autoimmune disease. If in fact this is part of a generalized autoimmune disease and/or vasculitis, it could explain the patient's stroke. However, he is also at high risk because of generalized atherosclerosis for a simple stroke.

[AR at 137.]

Plaintiff contends that Dr. Herrman's comment concerning whether plaintiff's chronic kidney disease was idiopathic or part of a generalized autoimmune disease suggested that the record was ambiguous and, thus, required further development. Joint Stip. at 8-10. Plaintiff's argument is meritless.

Prior to the date last insured of December 31, 2004, plaintiff received treatment for left elbow pain, rashes on his face, removal of sutures on his right inner thigh, and dermatofibroma. [AR at 116-29.] Plaintiff did not show any symptoms of kidney disease until December 2005 or January 2006. [AR at 159-61.] Specifically, on January 6, 2006, plaintiff reported that he had

developed "new" lower extremity swelling in December 2005. [AR at 159.] Dr. Desmond Sjauwfoekloy noted that plaintiff's "new right-sided effusion in the setting of lower extremity anasarca" was unlikely to be of primary pulmonary etiology, but was likely caused by "congestive heart failure versus nephrotic syndrome, less likely liver disease." [AR at 160.] Shortly thereafter, plaintiff was diagnosed with nephrotic syndrome. [AR at 155-58.]

Dr. Landau, who reviewed plaintiff's medical records, testified that, prior to the date last insured, plaintiff suffered only one severe impairment: COPD. [AR at 13-14.] He indicated that plaintiff's kidney disease arose in January 2006, at which time he met Listing 6.06A and 6.06B for nephrotic syndrome.[7] [AR at 14-15.] The ALJ adopted Dr. Landau's finding that plaintiff's kidney disease arose after the date last issued and, therefore, was irrelevant to plaintiff's disability claim. See Flaten, 44 F.3d at 1461 & n.4. Dr. Landau's opinion constituted substantial evidence upon which the ALJ could rely. See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); see also Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); Armstrong, 160 F.3d at 590 (holding that "where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date").

Here, the record concerning plaintiff's kidney disease was not ambiguous or inadequate so as to trigger any further duty on the part of the ALJ. The evidence reveals that plaintiff's kidney

---

[7] In order to be considered disabled for nephrotic syndrome under Listing 6.06, a claimant must show the following:
> 6.06 Nephrotic syndrome, with anasarca, persisting for at least 3 months despite prescribed therapy (see 6.00E5). With:
> A. Serum albumin of 3.0 g per dL (100 ml) or less and proteinuria of 3.5 g or greater per 24 hours.
> or
> B. Proteinuria of 10.0 g or greater per 24 hours.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 6.06.

11

disease arose after the date last insured, and, thus, additional evidence of that condition was not needed for proper analysis of plaintiff's disability during the relevant time period.

**C.    LISTING**

Plaintiff argues that the ALJ failed to adequately explain his evaluation of the combined effects of plaintiff's impairments in determining whether his impairments met or equaled a listed impairment. Joint Stip. at 12-13.

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the Listing. See 20 C.F.R. §§ 404.1520(d), 416.920(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)). In order for a claimant's impairment or combination of impairments to meet the requirements of a listing, all of the criteria of that listing and the duration requirement must be satisfied. See 20 C.F.R. §§ 404.1525(c)(1)-(3); 416.925(c)(1)-(3); see also SSR 83-19 ("[a]n impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment."). To equal a listed impairment, a claimant's impairment or combination of impairments must "at least equal in severity and duration" the criteria of a listed impairment. See 20 C.F.R. §§ 404.1526(a), 416.926(a); see also SSR 83-19 (a claimant's impairment is "equivalent" to a listing only if her symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like the claimant's impairment). A claimant bears the burden of proving that he or she has an impairment that meets or equals the criteria of a listed impairment. See Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.") (citation omitted); see also Lewis, 236 F.3d at 514 (ALJ's failure to consider equivalence was not

reversible error where the claimant offered no theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment).

Plaintiff has failed to meet his burden of proving that he had a combination of impairments that met or equaled a Listing. Specifically, plaintiff has not advanced any theory on how he met or equaled a Listing prior to the date last insured or pointed to any evidence that he actually met the Listing based on the record. See Burch, 400 F.3d at 683; see also Lewis, 236 F.3d at 514 (rejecting a claimant's contention that the ALJ's failure to consider the combined effect of his impairments was in error, where the claimant offered no theory as to how his impairments combined to equal a listed impairment and did not "point[] to evidence that shows that his combined impairments equal a listed impairment"). Indeed, the record shows that the only severe impairment plaintiff had prior to his date last insured was COPD. [AR at 116-29.] Moreover, the ALJ questioned Dr. Landau as to whether plaintiff met or equaled a Listing prior to the date last insured. [AR at 14.] Dr. Landau replied in the negative. [Id.] Dr. Landau's opinion constituted substantial evidence upon which the ALJ could rely. See Tonapetyan, 242 F.3d at 1149; see also Lester, 81 F.3d at 830-31 (the opinion of a nonexamining physician may serve as substantial evidence when it is consistent with other independent evidence in the record); SSR 96-6p (while the ALJ "is responsible for deciding the ultimate legal question whether a listing is met or equaled," the ALJ may give weight to the opinion of a medical expert in determining the issue of equivalence). Accordingly, this claim does not warrant remand.

## D. PLAINTIFF'S CREDIBILITY

Plaintiff next contends that the ALJ failed to properly consider plaintiff's testimony regarding his mental and physical impairments. Joint Stip. at 14-15. Specifically, plaintiff argues that the ALJ did not articulate clear and convincing reasons for discounting plaintiff's testimony. Id.

Whenever an ALJ discredits a claimant's testimony, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding

evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that the plaintiff is malingering, the ALJ must state which testimony is not credible and identify the evidence that undermines the claimant's complaints. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

At the hearing, plaintiff testified that he has experienced fatigue and difficulty concentrating since June 2005. [AR at 17-19.] He estimated that he could walk only about 200 feet and required one hour naps during the day. [AR at 17-18.]

In his decision, the ALJ determined that "[plaintiff's] medically determinable impairment could have been reasonably expected to produce the alleged symptoms, but that [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [AR at 32.] As the ALJ made no finding that plaintiff was malingering, the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In evaluating plaintiff's alleged symptoms and limitations, the ALJ found that, although plaintiff alleged an inability to engage in work-related activities since March 1, 2002, "the medical evidence in the file shows that [plaintiff] had minimal treatment through the date last insured of December 31, 2004."

[AR at 33.] The ALJ then gave plaintiff "the benefit of the doubt" in determining that plaintiff had COPD prior to the date last insured but found that "there is no evidence this condition caused acute findings." [Id.] The ALJ also found that "[t]here is no other medical evidence showing evidence that [plaintiff] had other severe medically determinable impairments prior to the date last insured; there is no evidence [plaintiff] used intensive pain medications; and there is no evidence [plaintiff] had greater restrictions than the residual functional capacity found herein." [Id.]

Here, the ALJ provided clear and convincing reasons for discounting plaintiff's subjective allegations. For example, the ALJ properly noted that the medical records were bereft of any evidence indicating that plaintiff suffered from any severe impairment other than COPD prior to the date last insured. See Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (a claimant must produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged symptom). The ALJ also properly found that plaintiff had minimal treatment prior to the date last insured. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (an ALJ may rely on a claimant's conservative treatment regimen to reject a claimant's testimony of disabling limitations or disabling pain); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that the claimant received only conservative treatment for back injury is a clear and convincing reason for disregarding testimony that the claimant is disabled). Although the ALJ found that plaintiff had COPD prior to the date last insured, there is no evidence that plaintiff complained of, or received treatment for, any symptoms related to this condition or to any of his other impairments (i.e., kidney disease, stroke, or vision problems).[8] [AR at 116-29.] During the relevant time period, plaintiff received only minimal treatment for left elbow pain, rashes on his face, removal of sutures on his right inner thigh, and dermatofibroma. [Id.] None of these ailments was related to the impairments that allegedly caused plaintiff's disability. Moreover, as indicated by Dr. Landau, none of the treatment records after the date last insured demonstrate a disability prior to the expiration of plaintiff's insured status. [AR at 13-17, 134-428.]

---

[8] Plaintiff did receive treatment for his kidney disease, stroke, and vision problems after the date last insured. [AR at 134-428.] However, as noted by Dr. Landau, these impairments were not medically determinable prior to the date last insured. [AR at 13-16.]

Furthermore, in finding plaintiff not entirely credible, the ALJ properly noted that the medical evidence did not support plaintiff's subjective allegations. Although the absence of objective medical findings to support the degree of pain cannot be the sole reason to reject subjective complaints, it has been recognized as one valid consideration. See Bunnell, 947 F.2d at 345-47 (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("because a claimant need not present clinical or diagnostic evidence to support the severity of his pain . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider).

The ALJ employed ordinary techniques of credibility determination to conclude that plaintiff's subjective complaints were not entirely credible, and thus his conclusion is entitled to deference.[9] See Fair, 885 F.2d at 604 n.5; see also 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p. As such, remand is not warranted on this issue.

**E.  LAY WITNESS TESTIMONY**

---

[9] Plaintiff appears to take issue with the ALJ's failure to specifically address plaintiff's statements contained in his June 2006, Disability Report. Joint Stip. at 14-15, 17. In the report, plaintiff stated:
> I cannot work. I swell up. My lungs have to be drained every 2-3 months. The water pills I take do not work. I am scared to drive because of my vision. My emph[y]sema makes it difficult to breathe, I have to use a machine and medication to breathe. My kidneys are leaking and filling my body up with fluid. I cannot bend over to put my shoes on. When the fluid builds up and is removed it comes right back. I think I just had a mini stroke recently.

[AR at 72.] Any error by the ALJ in failing to specifically address plaintiff's statements contained in the Disability Report was harmless. See Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability); see also Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984) (same). Plaintiff's description of his ailments appears to pertain to a period of time after the date last insured given that the report was completed in June 2006 and the medical records pertaining to the relevant time period do not support his allegations. [AR at 116-29.] Moreover, the aforementioned reasons cited by the ALJ in discounting plaintiff's hearing testimony are equally applicable to his statements contained in the Disability Report.

Plaintiff also claims that the ALJ failed to properly consider the lay witness testimony of plaintiff's wife, Sharon Cline. Joint Stip. at 17-19. Specifically, plaintiff argues that the ALJ did not provide germane reasons for discounting Ms. Cline's testimony. Id.

Judges may, "in addition to evidence from the acceptable medical sources . . . , also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.1913(d). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. See 20 C.F.R. §§ 404.1513(d)(4), 416.1913(d)(4). Thus, lay witness testimony by family members who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague, 812 F.2d at 1231-32; see Dodrill, 12 F.3d at 919 ("An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight."). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919. Failure to consider lay testimony will be considered harmless error only if "it [is] clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

At the hearing, Ms. Cline testified that plaintiff started to experience fatigue in 2004 and that it caused him to take naps in 2005. [AR at 19.] She explained that plaintiff used to take "nice long walk[s]" with their dog but since March or April 2005, he stopped doing so. [Id.] Ms. Cline also stated that plaintiff's memory drastically deteriorated since 2005. [AR at 20.] She commented that plaintiff "[n]o longer knows where things are kept." [Id.]

In his decision, the ALJ found that "[w]hile Ms. Cline appeared to be since[re] during her testimony, there is nothing in the objective record which supports a finding that [plaintiff] had greater restrictions through December 31, 2004; or that [plaintiff] was forgetful and had significant memory deficits." [AR at 33.]

17

1   Here, the ALJ discredited Ms. Cline's testimony insofar as it suggested that plaintiff had
2   greater limitations during the relevant time period than those found by the ALJ. The ALJ's
3   rejection of Ms. Cline's testimony because it was not supported by the medical records was
4   sufficient. Accordingly, this claim does not warrant remand.

### F.  HYPOTHETICAL QUESTION

Finally, plaintiff argues that the ALJ failed to pose a complete hypothetical question to the vocational expert. Joint Stip. at 20-21.

At the hearing, the ALJ posed the following hypothetical question to the vocational expert:

> [L]et's suppose that there's somebody who's limited to walking, standing, sitting six hours out of eight. With breaks every two hours. A normal fifteen minute break in the morning and afternoon and a half an hour or so for lunch. Lifting and carrying is limited to fifty pounds occasionally, twenty-five pounds frequently. And should work in an environment that's [sic], should be air conditioned, free of excessive inhaled pollutants, such as an office environment we're in today. With those limitations could someone perform any of [plaintiff's] prior work?

[AR at 20-21.] The vocational expert responded that the individual would be able to perform plaintiff's past relevant work as a security guard as it is generally performed. [AR at 21-22.]

The determination at step four that a claimant can return to his past relevant work need not be supported by vocational testimony. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996); see also Matthews, 10 F.3d at 681 (finding that "since [the claimant] failed to show that he was unable to return to his previous job as a receiving clerk/inspector, the burden of proof remained with [the claimant]" and "[t]he vocational expert's testimony was thus useful, but not required"). Here, the ALJ found that plaintiff could return to his past relevant work. [AR at 33-34.]

Nevertheless, plaintiff alleges that the hypothetical question "fails to set out each of the limitations described by Dr. Hantz" and "fails to set out factors bearing upon [his] diagnosis of COPD" and his "severe memory loss as . . . testified to by the lay witness." Joint Stip. at 20.

In order for the vocational expert's testimony to constitute substantial evidence, the ALJ must pose hypothetical questions that "consider all of the claimant's limitations." Andrews, 53 F.3d at 1044 (citing Magallanes, 881 F.2d at 756). However, the ALJ is not required to include

1  limitations for which there was no evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th
2  Cir. 2001) (holding that an ALJ is not bound to accept as true the restrictions set forth in a
3  hypothetical if they were not supported by substantial evidence). Instead, the ALJ is required to
4  pose hypothetical questions based upon medical assumptions supported by substantial evidence
5  in the record that reflect the claimant's limitations. Id. at 1163-64 (citing Roberts v. Shalala, 66
6  F.3d 179, 184 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996)).

Contrary to plaintiff's allegation, the ALJ did include limitations caused by COPD. [AR at 20-21.] The ALJ found that, during the relevant time period, plaintiff suffered only from the severe impairment of COPD. [AR at 30.] Thus, the ALJ's RFC assessment (i.e., limited range of medium work) and his corresponding hypothetical question concerned the limitations arising from the COPD. With respect to plaintiff's alleged limitations based on Ms. Cline's testimony and Dr. Hantz's opinion, as discussed above, the ALJ properly declined to include them in his RFC assessment and in the hypothetical question posed to the vocational expert. Thus, the ALJ was not required to include further functional limitations in the hypothetical question. See Osenbrock, 240 F.3d at 1164-65.

In sum, the ALJ was not required to rely upon the vocational expert's testimony to determine that plaintiff was capable of returning to his past relevant work. Even if the vocational expert's testimony were required, however, the ALJ properly included all of the limitations that he found supported by the record. As such, the hypothetical question the ALJ posed to the vocational expert was sufficiently complete. Remand is not warranted on this claim.

/
/
/
/
/
/
/
/

## VI.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: July 16, 2009

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE